**CROUSE–HINDS COMPANY, Plaintiff,**

**v.**

**INTERNORTH, INC. and I N Holdings, Inc., Defendants.**

**No. 80–CV–722.**

United States District Court,
N. D. New York.

Oct. 25, 1980.

See also D.C. 518 F.Supp. 390 and D.C. 518 F.Supp. 416.

Hancock, Estabrook, Ryan, Shove & Hust, Syracuse, N.Y., Sullivan & Cromwell, New York City, for defendants; Donald J. Kemple, Syracuse, N.Y., John L. Warden, Robert J. Katz, D. Stuart Meiklejohn, William L. Farris, New York City, of counsel.

Bond, Schoeneck & King, Syracuse, N.Y., Skadden, Arps, Slate, Meagher & Flom, New York City, for plaintiff; Charles T. Beeching, Syracuse, N.Y., Edwin E. McAmis, New York City, Rodney O. Thorson, Washington, D.C., Kurt Koegler, New York City, Randy Mott, Washington, D.C., Reid L. Ashinoff, New York City, of counsel.

## MEMORANDUM—ORDER

MUNSON, Chief Judge.

Plaintiff, Crouse-Hinds Company, has offered into evidence Exhibits 187, 188, and 189, and their admissibility has been objected to by defendant InterNorth, Inc. The first of these exhibits, number 187, is a copy of an Indictment returned in the United States District Court for the Northern District of Wisconsin on April 30, 1958, which charged Northern Natural Gas Company (presently InterNorth, Inc.), several of its corporate officers, and certain other corporations with violations of Sections 1 and 2 of the Sherman Act. Plaintiff is prepared to offer additional evidence that, after pleas of nolo contendere were entered by Northern and the corporate officers, they were convicted on such charges and fined.

Also offered by plaintiff is Exhibit 188, a Complaint filed by the United States against Northern Natural Gas Company and dated May 1, 1970, which alleges that Northern participated in contracts, the restrictive terms of which violated Section 1 of the Sherman Act. The third exhibit presently in dispute is number 189, which is a Consent Judgment entered in the above-named action. Included in the terms of the consent decree is the following statement: "the entry of this Final Judgment without trial or adjudication of any issue of fact or law herein, and without this Final Judgment constituting evidence or an admission by and party hereto with respect to any such issue; . . ." Nevertheless, the consent decree does enjoin Northern from entering into similar restrictive contracts in the future.

■ The purpose of plaintiff's offer of exhibits 187 through 189 is to "show that InterNorth has the propensity, the willingness to abuse [monopoly] power and engage in activities which are anticompetitive and contrary to the spirit of the antitrust laws." Thorson a p. 108 of Transcript. To prove that a merger violates Section 7 of the Clayton Act, 15 U.S.C. § 18, a plaintiff must demonstrate a "probability" that the effect of the merger " 'may be substantially to lessen competition.' " *Brown Shoe Co. v. United States,* 370 U.S. 294, 323, 82 S.Ct. 1502, 1522, 81 L.Ed.2d 510 (1962). Plaintiff intends the offered exhibits as proof of the "probability" that defendant will likely conduct itself in an anti-competitive manner should it acquire Crouse-Hinds.

■ Defendant argues, however, that evidence of consent decrees and pleas of nolo contendere are inadmissible in this case. In the first place, says defendant, offers of compromise and nolo pleas are inadmissible under Rules 408 and 410 of the Federal Rules of Evidence. Defendant also maintains that, pursuant to Section 5(a) of the Clayton Act, 15 U.S.C. § 16(a), plaintiff's proffered evidence could not be introduced. According to this provision, a consent judgment, as well as a nolo plea, entered in an

action brought by the United States, is not admissible as prima facie evidence of a past antitrust violation in a subsequent private action if they are entered before any testimony is taken. *Ambook Enterprises v. Time Inc.*, 612 F.2d 604, 612–13 n.14 (2d Cir. 1979); *Lipsky v. Com. United Corp.*, 551 F.2d 887, 893 & n.8 (2d Cir. 1976); 2 *Weinstein's Evidence*, ¶ 410[05] at pp. 410–34, 35. Since testimony in the presently controverted Government actions was not taken before the consent decree and nolo pleas were entered, defendant contends that the profferred exhibits are therefore inadmissible in this case.

In accordance with Congressional intent, Rules 408 and 410 and Section 16(a) must be read as coinciding. 2 *Weinstein's Evidence*, ¶ 410 at p. 410–8. While Rules 408 and 410 state the general federal evidentiary rule with regard to consent decrees and pleas of nolo contendere, Section 16(a) carves out an exception for purposes of antitrust cases. This Section offers a defendant an added incentive to settle a public civil or criminal antitrust action before litigation, or risk a private litigant's use of an ultimate settlement as a prima facie violation of the antitrust laws. 1974 U.S.Code Cong. & Ad. News 6536–37.

Yet, exactly how the Federal Rules of Evidence and Section 16(a) are applicable here is not all that clear. As the cases cited by plaintiff illustrate, a defendant's past antitrust indiscretions have been used, at least by the Government, to demonstrate the propensity for future violations. *See United States v. Aluminum Co. of America*, 377 U.S. 271, 277, 84 S.Ct. 1283, 1287, 12 L.Ed.2d 314 (1964) (Section 2 monopolization conviction); *United States v. Swift & Co.*, 286 U.S. 106, 116, 52 S.Ct. 460, 463, 76 L.Ed. 999 (1932) (Sherman Act violation consent decree entered); *United States v. General Dynamics Corp.*, 258 F.Supp. 36, 62–63 (S.D.N.Y.1966) (extensive examination of past antitrust misdeeds); *see also* 3 Von Kalinowski, *Antitrust Laws and Trade Regulation*, ¶¶ 19.02 and 19.02[9](b). Moreover, one commentator suggests that Section 16(a) is only available to litigants in private treble damages suits. *See 2 Weinstein's Evidence*, ¶ 410[05] at p. 410–34; *see also* 3 Von Kalinowski, *supra* at ¶ 19.-02[09](b) (author does not qualify use of such evidence). In attempting to understand the inconsistent use of past antitrust violations by public and private litigants, there is little to be gained by pretending that the Government has a greater need for such information than the private litigant. Moreover, social policy would be ill-served were courts to strike a rule that would freely permit this information to be used in Section 7 litigation by the Government, which can better bear the costs of antitrust litigation, while generally denying the same information to the private litigant under the Federal Rules of Evidence and Section 16(a).

Perhaps the answer to the present inquiry lies in the unique demands made upon the Court by Section 7, and the particular evidentiary obstacles faced by the plaintiff in these actions. Unlike most lawsuits which require a court to factually piece together a past event and determine the relative liabilities of the parties, a court trying a Section 7 lawsuit is required to determine the probable future economic consequences resulting from the merger of two companies, in order to establish their present rights under the antitrust laws. Because past behavior is often indicative of future actions, *see Brown Shoe Co. v. United States*, 370 U.S. 294, 332, 82 S.Ct. 1502, 1527, 8 L.Ed.2d 510 (1962), evidence of past antitrust violations, even in the form of consent decrees and pleas of nolo contendere, are significant economic and legal facts in the overall history of a relevant market. Such evidence is fundamental in a case under Section 7, which has been interpreted as requiring that the potential anticompetitive effects of a merger must be judged within the structure and history of the relevant market. *United States v. General Dynamics Corp.*, 415 U.S. 486, 498, 94 S.Ct. 1186, 1194, 39 L.Ed.2d 530 (1974), *citing Brown Shoe Co.*, *supra*. The difficulties in putting together meaningful evidentiary proof as a basis for projecting the probable anticompetitive consequences of a merger,

further militates in favor of the use of past antitrust violations. Areeda & Turner, 4 *Antitrust Law*, pp. 14–21 (1980).

Certainly the social policy benefits behind the use of consent judgments and nolo contendere pleas are important and should not be eroded. At the same time, the social policies underlying the antitrust laws should not be weakened by excluding the use of previous antitrust violations settled through consent decrees or pleas of nolo contendere. For example, since 1955, approximately 80 percent of antitrust complaints filed by the Justice Department have been settled by consent decrees. 1974 U.S.Code Cong. & Ad.News 6536. Thus, a denial of a plaintiff's right to use such proof would practically eliminate the evidentiary use of past antitrust conduct and its historical value to the marketplace in terms of antitrust enforcement. This Court believes that Congress could not have intended such a result.

In conclusion, defendant's objection to the admission into evidence of plaintiff's Exhibits 187, 188 and 189 is overruled and they are received in evidence.